# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3474-24

A.H.,

    Plaintiff-Respondent,

v.

A.M.,

    Defendant-Appellant.

_____

        Argued May 6, 2026 – Decided July 24, 2026

        Before Judges Paganelli and Jacobs.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1625-25.

        Shannon L. Theodore argued the cause for appellant.

        Respondent has not filed a brief.

PER CURIAM

Defendant A.M.[1] appeals from a May 27, 2025 final restraining order (FRO) entered in favor of plaintiff A.H. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

I.

Plaintiff and defendant were in a romantic relationship for approximately twelve years and share two minor children.  They resided together at defendant's father's home until September 2021, when they moved into a jointly-purchased residence.  Defendant left the shared residence in December 2023.

Plaintiff filed for a temporary restraining order on November 15, 2024, alleging harassment and a course of alarming conduct by defendant, including repeated drive-bys of her residence, threatening and harassing messages, and an incident in which defendant appeared at her mother's home with a firearm.  Plaintiff also alleged a history of physical and sexual abuse, supported by photographs and a video recording.

Trial commenced on January 30, 2025, and proceeded over several days concluding with the judge's oral ruling on May 27, 2025.  Both parties were represented by counsel.

---

[1]  We refer to the parties by their initials.  R. 1:38-3(d)(10).

At trial, plaintiff testified to a pattern of physical and emotional abuse, including specific incidents in 2019, 2020, and 2021, and ongoing harassment after the parties separated. She presented photographs of injuries and a video depicting defendant in possession of a firearm during an argument. In particular, plaintiff testified:

> When I was living with . . . defendant I sustained physical assault, sexual assault, and many, many threats.
>
> . . . .
>
> . . . We were in bed having an argument . . . . That's when . . . defendant got upset with me, turned over, and punched me right in the mouth.
>
> . . . .
>
> . . . We were sitting in . . . his father's house in the living room. We were having an argument about something. Defendant became upset with me, leaned over, and bit me in my shoulder.
>
> . . . .
>
> . . . [D]efendant threatened to shoot me. And when he threatened to shoot me, I pulled out my phone and started recording . . . .

Plaintiff also described defendant's repeated drive-bys, unannounced appearances, and threatening messages, including statements that he could enter her home at will.

3

> He started showing up to different locations where I
> was at, at my mother's house. He would be driving by
> past my home to where I had to purchase cameras for
> my residence due to him following me or driving -- or
> showing up to where I was at.

On one occasion defendant texted plaintiff: "I will be on the property to get my belongings and if I want to go on the property right now, I can. If I want to go in and sit on the couch right now, I can. You couldn't stop me."

Defendant denied the allegations, asserting any contact was incidental or related to parenting time, and claimed plaintiff was motivated by a desire to control custody of the children. He presented evidence, including maps showing local businesses near plaintiff's home and testimony that he had followed court orders regarding communication and exchanges. Denying the allegations of physical abuse, defendant testified, "I never once hurt [plaintiff]. I never wanted to hurt [plaintiff]. I would've done anything for her, like I did. I built a house for her in between going to the Police Academy and working, taking care of the twins. And it still didn't matter."

On May 27, 2025, the judge issued an oral decision finding plaintiff had credibly proved the predicate act of harassment. The judge specifically credited plaintiff's account of a September 2021 incident in which defendant was recorded with a firearm during an argument, as well as her testimony regarding

repeated drive-bys, unannounced appearances, and threatening messages. The judge found:

> I feel the fact that he's having a conversation with a weapon by his hip and there's an allegation that he drew it in that matter certainly concerns the [c]ourt. I think . . . plaintiff has proven that that is offensive conduct. So that's the predicate act in this matter because that's the one that I really felt that . . . plaintiff was credible and . . . defendant -- I'm not going to say that he was not credible in the sense that he said an untruth to me, but that kind of matter in regards to firearms and his answer which in my opinion I felt were somewhat evasive tips the scales on behalf of . . . plaintiff because the burden of proof here is preponderance of the evidence. . . .

In particular, the judge also considered the content and context of defendant's communications, including the message adduced by plaintiff in which defendant stated he would be on the property to retrieve his belongings, that if he wanted to go on the property, sit on the couch, he would, and plaintiff could not stop him. The judge found that message, together with the pattern of conduct, were intended to alarm and seriously annoy plaintiff.

> I do think that . . . plaintiff has proven that predicate act.
>
> I also find when I get to the [c]ourt date and the incident . . . related to the traveling by, related to the effort to get the property there, they are also harassing in nature in that particular matter, not to the degree of the gun in the bed. But they are, in this [c]ourt's

5

opinion, a little bit more than contretemps, and I think . . . defendant certainly had an anger issue in regards to what he felt was the thwarting of . . . plaintiff, but I do not find that she did that and I think that she proved her particular case for harassment based on that particular matter and the other cases through the exhibits that I reviewed. . . .

After finding a predicate act of domestic violence, the judge considered whether an FRO was necessary to protect the victim from immediate danger or future abuse, considering the factors set forth in N.J.S.A. 2C:25-29(a) and under Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The judge found that the prior history of violence, the escalation of defendant's conduct after the parties separated, and the ongoing risk posed by defendant's access to firearms and disregard for plaintiff's boundaries warranted entry of an FRO.

On appeal, defendant argues the trial judge erred in finding harassment, contending that the evidence did not support a finding of a purpose to harass or a course of alarming conduct. He asserts the judge misapplied the law, gave undue weight to plaintiff's testimony and evidence, and failed to recognize that the parties' disputes were mere domestic contretemps related to custody.

II.

Our review of a Family Part judge's order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We accord substantial deference to Family Part

6

judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). That "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Because a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

"[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). We "exercise [our] original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." Ibid. (citing Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App.

Div. 1960)). We review de novo a trial court's interpretation of law. D.W. v. R.W., 212 N.J. 232, 245-46 (2012) (citing Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999)).

The PDVA authorizes the entry of an FRO on proof, by a preponderance of the evidence, of a predicate act of domestic violence and a finding that an FRO is necessary to protect the victim from immediate danger or future abuse. N.J.S.A. 2C:25-19(a), -29(b); see also Silver, 387 N.J. Super. at 125-27.

Harassment is defined by N.J.S.A. 2C:33-4 as follows:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

The trial judge found that plaintiff's testimony, corroborated by photographs and video evidence, established a course of alarming conduct and a purpose to harass. The judge based his findings on credibility assessments of the witnesses, specifically crediting plaintiff's account of the September 2021

8

incident in which defendant was recorded with a firearm during an argument, as well as her testimony regarding repeated drive-bys, unannounced appearances, and threatening messages.

The judge found defendant's explanations for his conduct less credible, particularly regarding the presence and storage of firearms. The judge noted defendant's answers regarding the firearm in the video were evasive and inconsistent with his training and experience as a corrections officer. The judge determined defendant's message regarding entering and staying in plaintiff's residence at will, along with other behavioral patterns, was intended to alarm and seriously annoy plaintiff.

We discern no basis to disturb these findings. The judge properly exercised his discretion in crediting plaintiff's testimony and finding that the evidence established a course of alarming conduct with a purpose to harass. Moreover, the judge found defendant's conduct went beyond mere contretemps and constituted harassment under the PDVA. See Silver, 387 N.J. Super. at 125-27; Cesare, 154 N.J. at 412-13.

The second prong of Silver requires the court to determine whether an FRO is necessary to protect the victim from immediate danger or future abuse, considering the factors set forth in N.J.S.A. 2C:25-29(a). Silver, 387 N.J. Super.

at 125-27. The judge found that the prior history of violence, the escalation of defendant's conduct after the parties separated, and the ongoing risk posed by defendant's access to firearms and disregard for plaintiff's boundaries warranted entry of an FRO.

The judge determined that defendant did not respect plaintiff's requests for boundaries or court orders limiting contact, and that absent an FRO, plaintiff would remain at risk. Based on our review of the record, we are satisfied the judge's findings regarding the need for an FRO are supported by substantial credible evidence and are consistent with the remedial purposes of the PDVA. Id. at 127; N.J.S.A. 2C:25-29(a).

To the extent defendant contests either his exclusion from the shared residence or the scope of relief granted, the PDVA permits such relief once domestic violence has been established. N.J.S.A. 2C:25-29(b)(2); J.D. v. M.A.D., 429 N.J. Super. 34, 45-46 (App. Div. 2012).

In summary, we are satisfied the trial judge thoroughly evaluated the evidence and made detailed credibility findings supported by substantial credible evidence in the record. The judge properly exercised his discretion and applied the correct legal standards when issuing an FRO against defendant.

To the extent we have not specifically addressed any of defendant's arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Harley

Clerk of the Appellate Division

A-3474-24